DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Jeffrey A. Catanzarite has appealed from a judgment of the Akron Municipal Court that overruled his motion to suppress. This Court affirms.
 I {¶ 2} On July 26, 2003, Appellant was arrested for Driving Under the Influence of Alcohol ("DUI"), in violation of R.C. 4511.19(A)(1). On July 29, 2003, Appellant entered a plea of "not guilty." On August 28, 2003, Appellant filed a motion to suppress the evidence from the traffic stop. Appellant argued that the evidence, including, but not limited to, the results of the field sobriety tests, Appellant's statements, and the observations and opinions of the involved police officers, should be suppressed because said evidence was obtained during an unlawful stop. A suppression hearing was held on October 6, 2003.
 {¶ 3} During the hearing, the trial court heard testimony from Officer Moats of the Bath Township Police Department. On October 16, 2003, the trial court overruled Appellant's motion to suppress.
 {¶ 4} The matter proceeded to a jury trial and on May 17, 2004, Appellant was found guilty of DUI. Appellant has timely appealed, asserting one assignment of error.
 II Assignment of Error Number One
"In the face of contradictory evidence the trial court failed to apply the `totality of the circumstances' test in overruling [appellant's] motion to suppress[.]"
 {¶ 5} In his sole assignment of error, Appellant has argued that the trial court erred in its analysis of Maumee v. Weisner (1999),87 Ohio St.3d 295. Specifically, Appellant has asserted that the trial court erred in failing to consider the "totality of the circumstances" because it found reasonable suspicion for the traffic stop solely on the report of a tipster. We disagree.
 {¶ 6} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v. Hopfer (1996), 112 Ohio App.3d 521, 548, appeal not allowed (1996), 77 Ohio St.3d 1488, quoting State v. Venham (1994),96 Ohio App.3d 649, 653. Accordingly, this Court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998),127 Ohio App.3d 414, 416. (Italics sic).
 {¶ 7} The trial court's journal entry overruling Appellant's motion to suppress contained the following findings of fact:
"The court finds, on the evidence, that on July 26, 2003, at or about 2:55 a.m. Officer Moats of the Bath Police Department was on duty, in proper uniform and in a properly marked and lighted police vehicle in his jurisdiction.
"At that time and place he received a message from his dispatch, one Gina Powers, that she was advised by Taco Bell, located in Bath, that a patron was at the drive-thru really drunk; that he was operating a black Sebring convertible; that he had almost hit the building; that he had dropped his money; and that the license plate of the vehicle was AJP9960.
"Reacting to the message the officer proceeded to a Kentucky Fried Chicken located near the location named, and at a position to observe the drive-thru observed a black Mustang convertible bearing Ohio License AJP9960 which matched the dispatched plate. It was the only vehicle there.
"As he observed the vehicle the person got his food and drove out of the Taco Bell onto Route 18, which resulted in the vehicle leaving the Bath jurisdiction.
"The officer immediately notified his sergeant and notified Fairlawn Police Department into which jurisdiction the vehicle had entered. The call to Fairlawn was entered as a signal four, which means `extreme D.W.I.'
"The officer followed the vehicle which was on Route 18 (Market Street) to Smith Road a total of some 3/10 of a mile, the vehicle stopped at red lights, turned properly, stopped properly and the officer observed no other erratic driving or violations.
"The officer testified that the driving consumed some couple of minutes. These events took place in Fairlawn during which the Fairlawn Police did not respond.
"The matter continued until the vehicle re-entered the Bath jurisdiction where the officer effected this stop after being advised by Sergeant Brown to do so.
"The officer testified that at the stop he had knowledge only of the dispatch information and that he observed no other violations or erratic driving and that the matter covered some two miles.
"He testified that without the dispatcher's tip he would not have effected the stop."
 {¶ 8} After a review of the record, we find that the trial court's factual determinations are supported by competent, credible evidence. The transcript of the suppression hearing clearly supports the trial court's findings of fact. Accordingly, we turn to the trial court's legal conclusions to conduct a de novo review. See Russell,127 Ohio App.3d at 416.
 {¶ 9} Appellant has argued that the trial court did not base its decision to overrule the suppression motion on the totality of the circumstances. We disagree. In its journal entry overruling Appellant's motion to suppress, the trial court stated:
"The Court finds, on the evidence, and by a preponderance of the proof and considering the totality of the circumstances that the officer based on the information from his dispatcher and a reliable identified informant did have reasonable suspicion to effect the stop of the Defendant for further investigation."
Further, the factual findings of the trial court demonstrate that the trial court considered all of the evidence. The trial court found that Officer Moats did not observe any traffic violations or erratic driving and that he would not have effected the traffic stop without the information he learned from the dispatcher. Accordingly, we find that the trial court did consider the totality of the circumstances and found that, despite Officer Moats' observations, the tip from the Taco Bell employee was sufficient to establish reasonable suspicion. Therefore, having found that the trial court did consider the totality of the circumstances, we will review the trial court's decision to determine whether its finding of reasonable suspicion was proper.
 {¶ 10} A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. Whren v. United States (1996), 517 U.S. 806, 809-810,116 S.Ct. 1769, 135 L.Ed.2d 89. However, an investigative stop of a motorist does not violate the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity. Weisner, 87 Ohio St.3d at 299, citing Terry v. Ohio (1968),392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889. "To justify a particular intrusion, the officer must demonstrate `specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Weisner, 87 Ohio St.3d at 299, quoting Terry, 392 U.S. at 21. Evaluating these facts and inferences requires the court to consider the totality of the surrounding circumstances. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus, certiorari denied (1981), 454 U.S. 822, 102 S.Ct. 107,70 L.Ed.2d 94. "Thus, `if the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop.'" State v. Hoder, 9th Dist. No, 03CA0042,2004-Ohio-3083, at ¶ 8, quoting State v. Shook (June 5, 1994), 9th Dist. No. 93CA005716.
 {¶ 11} The investigative stop in question was based on a civilian tip. The Ohio Supreme Court has recently addressed the issue of tipsters and reasonable suspicion. In Maumee v. Weisner, (1999), 87 Ohio St.3d 295, the Ohio Supreme Court held that a telephone tip can, by itself, create reasonable suspicion justifying an investigative stop where the tip has sufficient indicia of reliability. Id at 296. In Maumee, a citizen informant's telephone tip lead the Maumee Police Department to stop Weisner for suspected DUI. Upon receiving the dispatch, which included the make, color, and license plate of the car, a Maumee officer pulled Weisner over and subsequently arrested him.
 {¶ 12} After discussing the various types of tipsters and other applications of "reasonable suspicion" to information received from tipsters, the Maumee Court clarified the issue. "[W]here an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." Id. at 298 (emphasis sic). In such a situation, "the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." Id. at 299, citing Alabama v. White (1990),496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.E.2d 301. "The appropriate analysis then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." Maumee,87 Ohio St.3d at 299. The informant's veracity, reliability, and basis of knowledge are highly relevant factors in determining the value of the informant's tip. Id., citing White, 496 U.S. at 328.
 {¶ 13} Turning to the case sub judice, we find that the tip satisfies the relevant factors cited in Maumee. First, the dispatch officer knew the identity of the tipster. "A known or identified informant has greater indicia of reliability than does the anonymous informant, who may have ulterior motives for providing the tip leading to the stop." State v.Roberts (May 9, 2001), 9th Dist. No. 20355 at 4, citing Maumee,87 Ohio St.3d at 300-01. Second, the personal observations of the tipster are highly reliable. See Maumee, 87 Ohio St.3d at 302. The tipster provided an eyewitness account of the crime, relaying the circumstances as they were occurring, and described from her personal contact with Appellant that he was "really drunk," had dropped his money and almost hit the building. Third, the tipster's motivation supports her reliability because such a call was based on her desire to eliminate a risk to public safety. See Id.
 {¶ 14} Based on the foregoing, we find that the tip from Taco Bell had sufficient indicia of reliability to justify the investigative stop. The Taco Bell employee was an identified citizen whose tip was based on personal observations as the events occurred. As a result, the tip merits a high degree of credibility and significant value, rendering it sufficient to withstand the Fourth Amendment challenge.
 {¶ 15} Appellant has also argued that because Officer Moats made his own observations, the tip cannot supply the reasonable suspicion for the stop and that Maumee does not apply. We disagree. This Court has previously addressed tipsters establishing reasonable suspicion of criminal activity. In State v. Roberts, after receiving a tip of a possible drunk driver, the police followed Roberts for approximately ¾ of a mile and watched him negotiate two turns before pulling him over for suspected driving under the influence. The officer who followed Roberts "did not observe any errant driving or any traffic violation." Roberts,
supra at 2. Roberts argued that the officer had no reasonable suspicion to pull him over because the officer did not witness any evidence of driving under the influence. We held that "even if the officer does not observe the behavior reported by the informant, that does not necessarily undermine the existing reasonable suspicion." Id. at 5; see State v.Fejes (Sept. 17, 1997), 9th Dist. No. 96CA0088, appeal not allowed (1998)81 Ohio St.3d 1416.
 {¶ 16} While we recognize that Officer Moats did not observe Appellant commit any traffic violations or drive erratically, we find that the tip was sufficient without independent police corroboration. Further, we find that Maumee applies to the case sub judice. See Roberts, supra at 5. Also, although Officer Moats may have followed Appellant farther than the officer in Roberts, our previous holding stands and we find that the fact that Officer Moats did not observe erratic driving or traffic violations does not undermine the tip. Accordingly, we conclude that the facts of this case were sufficient to establish a reasonable suspicion of criminal activity warranting a constitutionally valid stop. Therefore, Appellant's sole assignment of error lacks merit.
 III {¶ 17} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Concurs.